JEWELL, Respondent, vs. HEMPLEMAN and others, Appellants.

*December 7, 1932—January 10, 1933.*

For the appellants there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Edward T. Vinopal, Jr.,* district attorney of Juneau county, and *Loomis & Roswell* of Mauston, attorneys for the Fidelity & Deposit Company of Maryland, and oral argument by *Mr. Messerschmidt.*

*Frank H. Hanson* of Mauston, for the respondent.

NELSON, J.   If the arrest of the plaintiff without a warrant was unlawful the subsequent imprisonment was unlawful and the plaintiff was falsely imprisoned.

The arrest of the plaintiff was made by defendant Button, a conservation warden, in the presence of defendants Jensen, Laridaen, and Kuska, three deputy sheriffs.   The ma-

terial facts and circumstances leading up to the arrest are substantially as follows: On March 4, 1931, Button told defendant Hempleman, who was the sheriff of Juneau county, that he was going to make raids on three different places and he requested the sheriff to accompany him with some of his deputies. The sheriff was busy with other work but he authorized Button to get as many deputies as he wanted. Thereafter Button secured several deputies, including the three named above. Laridaen and Jensen were instructed to proceed to the plaintiff's farm and to make a search. Pursuant to such instructions they drove to the plaintiff's farm, arriving there between ten and eleven o'clock in the forenoon, where they found the plaintiff at home. They told him that they had come to search his premises for venison, whereupon the plaintiff said: "Hop to it, I will go with you." The plaintiff got his hat and went with them. They made a search of the corn crib, the granary, the machine shed, and the barn. The plaintiff then suggested that they search his garage. While the garage was being searched Jensen noticed that there was a door leading from the garage into the milk house. Jensen testified that upon entering the milk house he noticed some hair on the floor and also on a table, some bloody newspapers, and a partly filled jar of meat immersed in old brine. Soon after defendants Button and Kuska arrived. Button entered the milk house, exhibited his credentials, hastily surveyed the situation, took out a piece of meat from the jar, pronounced it venison, and immediately placed the plaintiff under arrest. The plaintiff was then taken to Mauston and delivered into the custody of defendant Hempleman at the county jail. At the time of the arrest Button seized the jar of meat and took it with him to the jail. Formal complaint against the plaintiff was thereafter made as hereinbefore stated. The plaintiff entered a plea of not guilty and was released on his own recognizance. The same evening examination of the meat seized revealed

that it was unquestionably beef. The jar of meat was returned to the plaintiff the next day. The prosecution was thereupon dismissed on motion of the district attorney.

Upon the trial of this action a very small quantity of hair was exhibited which several of the officers testified had been picked up in the milk house and which, in the opinion of several witnesses, was deer hair. A witness for the plaintiff testified that the hair exhibited was not deer hair. Defendant Button testified that he had had a rather extended experience as a conservation warden, had seen lots of venison and deer bones, and was familiar with and knew the difference in texture, color, size of bones, etc., between venison and beef; that after looking at the meat in the milk house and without cutting it up or particularly examining it he had considered it venison.

At the time of plaintiff's arrest deputy conservation wardens were authorized "to arrest, with or without a warrant, any person detected in the actual violation, or whom such officer has reasonable cause to believe guilty of the violation of any of the provisions" of ch. 29, Stats. 1929.

The plaintiff was arrested for unlawfully possessing deer meat. The formal complaint promptly made thereafter so charged. In view of the undisputed fact that the meat seized was beef, not venison, the plaintiff was clearly not detected in the actual violation of any law unless it can be said that it is a crime to possess deer hair. The defendants assert that it is a crime to possess deer hair during the closed season for deer and contend that the court erred in not submitting the following question to the jury: "Did the defendants find, during the search, deer hair on the premises of the plaintiff?" The defendants argue that if this question had been submitted to the jury and answered "Yes," it would then follow that the arrest of the plaintiff without a warrant was justified because the warden detected the plaintiff in a violation of ch. 29. This contention is based upon what seems to us to be a

strained, unnatural, and absurd construction of language found in two sections of the statutes. Sec. 29.39 provides in part as follows:

"No person shall have in his possession or under his control . . . any game . . . or other wild animal or carcass or part thereof, during the closed season therefor."

Sec. 29.01 (2) provides as follows:

" 'Carcass' means the dead body of any wild animal to which it refers, including the head, hair, skin, plumage, skeleton, or any other part thereof."

Reading the language of the two sections of the statutes just mentioned together, defendants contend that it is unlawful to possess deer hair during the closed season. We cannot believe that the legislature so intended. Defendants' contention, if sound, would subject every hunter to prosecution who, after lawfully killing game, carelessly permits some of the hair or a foot of an animal to remain upon his premises during the closed season therefor. If defendants' contention is sound, one might even be prosecuted for possessing a buck tail preserved for use in making fishing tackle or for use as a hearth brush.

Defendants' contention is based upon an asserted legislative intent which we cannot in reason and good sense impute to the legislature. While the discovery of deer hair under certain circumstances may constitute an important link in a chain of circumstantial evidence, we do not think that the legislature ever intended that the possession of a few deer hairs during the closed season should constitute a crime. We hold, therefore, that the possession of deer hair does not constitute a violation of law. Our conclusion is that whether plaintiff was arrested, as the formal complaint charged, for possessing deer meat, or, as defendants now claim, for possessing deer hair, in either case his arrest without a warrant was not justified.

As to the contention that at the time of plaintiff's arrest the warden had reasonable cause to believe the plaintiff guilty of some violation of the provisions of ch. 29, we think that is fully disposed of by the finding of the jury. Under the testimony the jury might well have concluded that Button's examination of the meat was, to say the least, cursory and careless, that his conclusion was a hasty one, and that as an experienced warden he did not act prudently. The jury might well have concluded also from the evidence that the hair found in the milk house was not deer hair. The jury found the officers did not have reasonable cause to believe that the plaintiff had in his possession a carcass of a deer or any part thereof. We think that the finding of the jury finds ample support in the evidence.

*By the Court.*—Judgment affirmed.